## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| AI-CORE TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>OMRON CORPORATION,<br><br>Defendant. | Civil Action No. 2:24-cv-00624<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff AI-Core Technologies, LLC ("AI-Core" or "Plaintiff") files this Original Complaint against Omron Corporation ("Omron" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| 1 | 7,215,834 | Configurable Image Processing Driver | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7215834/ |
| 2 | 7,365,298 | Image Sensor And Method For Manufacturing The Same | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7365298/ |
| 3 | 7,623,036 | Adjusting Data Tag Readers With Feed-Forward Data | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7623036/ |
| 4 | 7,746,516 | Image Scanning | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7746516/ |
| 5 | 8,610,742 | Graphics Controls For Permitting Background Size Changes | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8610742/ |

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| 6 | 9,338,217 | Method And Apparatus For Computing Within A Wide Area Network | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9338217/ |

2.    Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3.    Plaintiff is a limited liability company formed under the laws of Texas with its registered office address at 17350 State Hwy 249, Suite 220, Houston, Texas 77064 (Harris County).

4.    Defendant is a corporation formed under the laws of Japan with its principal place of business at Shiokoji Horikawa, Shimogyoku, Kyoto 600-8530 Japan.

## JURISDICTION AND VENUE

5.    AI-Core repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

6.    This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

7.    Defendant is subject to this Court's specific and general personal jurisdiction under due process because of Defendant's substantial business in this judicial District, in the State of Texas, and in the United States, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in this state, in this District, and in the United States.

8.    Defendant intends to do and does business in and has committed acts of infringement in this District, in this State of Texas, and in the United States, directly, through intermediaries and

agents, and has offered to send and sent its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District, and in the United States.

9.    Defendant directly imports the Accused Products into the United States with the intent and knowledge that the Accused Products be provided to companies in this District and in the State of Texas.

10.    Defendant has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities.  Defendant regularly sells (either directly or indirectly), its products into this District.

11.    Defendant has placed infringing products into the stream of commerce *via* an established distribution channel with the knowledge or understanding that such products are being sold in this Judicial District and the State of Texas.

12.    Defendant is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and Judicial District, including its infringing activities alleged herein, from which Defendant has derived substantial revenue from goods sold to Texas residents and consumers.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).  *See also In re: HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in TC Heartland does not alter" the alien-venue rule).

## THE ACCUSED PRODUCTS

14.    AI-Core repeats and re-alleges the allegations in the Paragraphs above as though fully

set forth in their entirety.

15.    On information and belief, Defendant makes, uses, sells, offers for sale, imports, provides, supplies, and/or distributes the following products and services that infringe one or more claims of the Asserted Patents: (1) Omron FH and FZ Series Vision System; (2) Omron STC-MBA503POE PoE camera; (3) Omron MicroHAWK V430-F series Barcode Reader; (4) Omron WebLink; (5) other substantially similar products and services offered in the past or the future, and (6) all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products").

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,215,834

16.    AI-Core repeats and re-alleges the allegations in Paragraphs 1-15 above as though fully set forth in their entirety.

17.    The USPTO duly issued U.S. Patent No. 7,215,834 (the "'834 patent") on May 8, 2007, after full and fair examination of Application No. 10/165,716 which was filed on June 7, 2002. *See* '834 patent at 1. A Certificate of Correction was issued on September 11, 2007. *See id.* at 12.

18.    AI-Core owns all substantial rights, interest, and title in and to the '834 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

19.    The claims of the '834 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of imagine processing by an image capturing device.

20.    The written description of the '834 patent describes in technical detail each limitation

of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

21.     Defendant has directly infringed and continues to directly infringe one or more claims of the '834 patent by providing, supplying, using, causing to be used, distributing, importing, selling, offering for sale, and/or internal and external testing the Accused Products.

22.     The Accused Products, such as Omron's FH and FZ Series Vision Systems,  perform machine vision tasks and utilize an image capturing device, *e.g.,* FH/FZ series cameras comprising a sensor, e.g., Complementary Metal Oxide Semiconductor ("CMOS") or Charge-coupled device ("CCD") image sensor, adapted to capture image data, *e.g.*, images captured by a camera, allowing for the automatic extraction of information from images.

23.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 10 of the '834 patent.

24.      Defendant has indirectly infringed and continues to indirectly infringe the '834 patent by inducing others to directly infringe the '834 patent.  Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '834 patent by providing or requiring use of the Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '834 patent, including, for example, claim 10.  Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products

in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support on its website. Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '834 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '834 patent. Defendant's inducement is ongoing.

25.    Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '834 patent. Defendant has contributed and continues to contribute to the direct infringement of the '834 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '834 patent, including, for example, claim 10. The special features constitute a material part of the invention of one or more of the claims of the '834 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

26.    Defendant had knowledge of the '834 patent at least as of the date when it was notified of the filing of this action.

27.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of AI-Core's patent rights.

28.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

29.    Defendant's infringement of the '834 patent is, has been, and continues to be willful,

intentional, deliberate, or in conscious disregard of AI-Core's rights under the patent.

30.    AI-Core or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '834 patent.

31.    AI-Core has been damaged as a result of the infringing conduct by Defendant alleged above.    Thus, Defendant is liable to AI-Core in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

32.    AI-Core has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.    AI-Core has and will continue to suffer this harm by virtue of Defendant's infringement of the '834 patent.    Defendant's actions have interfered with and will interfere with AI-Core's ability to license technology.    The balance of hardships favors AI-Core's ability to commercialize its own ideas and technology.    The public interest in allowing AI-Core to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,365,298

33.    AI-Core repeats and re-alleges the allegations in Paragraphs 1-15 above as though fully set forth in their entirety.

34.    The USPTO duly issued U.S. Patent No. 7,365,298 (the "'298 patent") on April 29, 2008 after full and fair examination of Application No. 10/945,182 which was filed on September 20, 2004. *See* '298 patent at 1.  A Certificate of Correction was issued on September 2, 2008. *See id.* at 10.

35.    AI-Core owns all substantial rights, interest, and title in and to the '298 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

36.     The claims of the '298 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting image sensors and methods for manufacturing the same.

37.     The written description of the '298 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

38.     Defendant has directly infringed and continues to directly infringe one or more claims of the '298 patent by providing, supplying, using, causing to be used, distributing, importing, selling, offering for sale, and/or internal and external testing the Accused Products.

39.     The Accused Products, such as the Omron STC-MBA503POE PoE camera, provide CMOS imaging and a CMOS active pixel digital image sensor.

40.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '298 patent.

41.     Defendant has indirectly infringed and continues to indirectly infringe the '298 patent by inducing others to directly infringe the '298 patent.  Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '298 patent by providing or requiring use of the Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '298 patent,

including, for example, claim 1.  Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support on its website.  Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '298 patent and with the knowledge that the induced acts constitute infringement.  Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '298 patent.  Defendant's inducement is ongoing.

42.     Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '298 patent.  Defendant has contributed and continues to contribute to the direct infringement of the '298 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '298 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '298 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.

43.     Defendant had knowledge of the '298 patent at least as of the date when it was notified of the filing of this action.

44.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of AI-Core's patent rights.

45.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid

patent and this objective risk was either known or should have been known by Defendant.

46.    Defendant's infringement of the '298 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of AI-Core's rights under the patent.

47.    AI-Core or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '298 patent.

48.    AI-Core has been damaged as a result of the infringing conduct by Defendant alleged above.   Thus, Defendant is liable to AI-Core in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

49.    AI-Core has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  AI-Core has and will continue to suffer this harm by virtue of Defendant's infringement of the '298 patent.  Defendant's actions have interfered with and will interfere with AI-Core's ability to license technology.  The balance of hardships favors AI-Core's ability to commercialize its own ideas and technology.  The public interest in allowing AI-Core to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,623,036

50.    AI-Core repeats and re-alleges the allegations in Paragraphs 1-15 above as though fully set forth in their entirety.

51.    The USPTO duly issued U.S. Patent No. 7,623,036 (the "'036 patent") on November 24, 2009, after full and fair examination of Application No. 11/468,556 which was filed on August 30, 2006.  *See* '036 patent at 1.

52.    AI-Core owns all substantial rights, interest, and title in and to, the '036 patent including the sole and exclusive right to prosecute this action and enforce said patent against

infringers and to collect damages for all relevant times.

53.    The claims of the '036 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of adjusting data tag readers with feed-forward data.

54.    The written description of the '036 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

55.    Defendant has directly infringed and continues to directly infringe one or more claims of the '036 patent by providing, supplying, using, causing to be used, distributing, importing, selling, offering for sale, and/or internal and external testing the Accused Products.

56.    The Accused Products, such as the Omron MicroHAWK V430-F series Barcode Reader, provide an image-based barcode scanner that use advanced image processing algorithms to decode barcode from images.  The Omron MicroHAWK V430-F series Barcode Reader also comprises a barcode/imaging engine for processing images captured by the image sensor and other functions such as improving readability of captured data tags.

57.    Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 21 of the '036 patent.

58.    Defendant has indirectly infringed and continues to indirectly infringe the '036 patent by inducing others to directly infringe the '036 patent.  Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees,

partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '036 patent by providing or requiring use of the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '036 patent, including, for example, claim 21. Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support on its website. Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '036 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '036 patent. Defendant's inducement is ongoing.

59.     Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '036 patent. Defendant has contributed and continues to contribute to the direct infringement of the '036 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '036 patent, including, for example, claim 21. The special features constitute a material part of the invention of one or more of the claims of the '036 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

60.     Defendant had knowledge of the '036 patent at least as of the date when it was notified of the filing of this action.

61.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of AI-Core's patent rights.

62.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

63.     Defendant's infringement of the '036 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of AI-Core's rights under the patent.

64.     AI-Core or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '036 patent.

65.     AI-Core has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to AI-Core in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

66.     AI-Core has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  AI-Core has and will continue to suffer this harm by virtue of Defendant's infringement of the '036 patent.  Defendant's actions have interfered with and will interfere with AI-Core's ability to license technology.  The balance of hardships favors AI-Core's ability to commercialize its own ideas and technology.  The public interest in allowing AI-Core to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,746,516**

67.     AI-Core repeats and re-alleges the allegations in Paragraphs 1-15 above as though fully set forth in their entirety.

68.     The USPTO duly issued U.S. Patent No. 7,746,516 (the "'516 patent") on June 29,

2010 after full and fair examination of Application No. 11/512,668 which was filed on August 29, 2006. *See* '516 patent at 1. A Certificate of Correction was issued on November 9, 2010. *See id.* at 7.

69.     AI-Core owns all substantial rights, interest, and title in and to the '516 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

70.     The claims of the '516 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation image scanning and outputting.

71.     The written description of the '516 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

72.     Defendant has directly infringed and continues to directly infringe one or more claims of the '516 patent by providing, supplying, using, causing to be used, distributing, importing, selling, offering for sale, and/or internal and external testing the Accused Products.

73.     The Accused Products, such as the Omron MicroHAWK V430-F series Barcode Reader and WebLink, provide an image-based barcode scanner that utilizes advanced image processing algorithms to decode barcode from images and also utilizes a software application, WebLink interface, to configure and setup the barcode readers.

74.     Defendant has directly infringed and continues to directly infringe, either literally or

under the doctrine of equivalents, at least claim 10 of the '516 patent.

75.    Since at least the time of receiving the original complaint in this action, Defendant has indirectly infringed and continues to indirectly infringe the '516 patent by inducing others to directly infringe the '516 patent.  Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, contractors, customers and/or potential customers, to directly infringe, either literally or under the doctrine of equivalents, the '516 patent by providing or requiring use of the Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '516 patent, including, for example, claim 10.  Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support on its website. Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '516 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '516 patent.  Defendant's inducement is ongoing.

76.    Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '516 patent.  Defendant has contributed and continues to contribute to the direct infringement of the '516 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '516

patent, including, for example, claim 10.  The special features constitute a material part of the invention of one or more of the claims of the '516 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.

77.     Defendant had knowledge of the '516 patent at least as of the date when it was notified of the filing of this action.

78.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of AI-Core's patent rights.

79.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

80.     Defendant's direct infringement of the '516 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of AI-Core's rights under the patent.

81.     AI-Core or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '516 patent.

82.     AI-Core has been damaged as a result of the infringing conduct by Defendant alleged above.    Thus, Defendant is liable to AI-Core in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

83.     AI-Core has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  AI-Core has and will continue to suffer this harm by virtue of Defendant's infringement of the '516 patent.  Defendant's actions have interfered with and will interfere with AI-Core's ability to license technology.  The balance of hardships favors AI-Core's ability to commercialize its own ideas and technology.  The public interest in allowing

AI-Core to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,610,742

84.     AI-Core repeats and re-alleges the allegations in Paragraphs 1-15 above as though fully set forth in their entirety.

85.     The USPTO duly issued U.S. Patent No. 8,610,742 (the "'742 patent") on December 17, 2013 after full and fair examination of Application No. 11/765,296 which was filed on June 19, 2007.  *See* '742 patent at 1.  A Certificate of Correction was issued on May 6, 2014.

86.     AI-Core owns all substantial rights, interest, and title in and to the '742 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

87.     The claims of the '742 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of backgrounds used with graphics-based user interfaces.

88.     The written description of the '742 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

89.     Defendant has directly infringed and continues to directly infringe one or more claims of the '742 patent by providing, supplying, using, causing to be used, distributing, importing, selling, offering for sale, and/or internal and external testing the Accused Products.

90.     The Accused Products, such as the Omron WebLink, provide a system for the

configuration and setup of the barcode readers.

91.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 20 of the '742 patent.

92.     Defendant has indirectly infringed and continues to indirectly infringe the '742 patent by inducing others to directly infringe the '742 patent.  Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '742 patent by providing or requiring use of the Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '742 patent, including, for example, claim 20.  Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support on its website.  Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '742 patent and with the knowledge that the induced acts constitute infringement.  Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '742 patent.  Defendant's inducement is ongoing.

93.     Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '742 patent.  Defendant has contributed and continues to contribute to the direct infringement of the '742 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way

and that have no substantial uses other than ones that infringe one or more claims of the '742 patent, including, for example, claim 20.  The special features constitute a material part of the invention of one or more of the claims of the '742 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.

94.    Defendant had knowledge of the '742 patent at least as of the date when it was notified of the filing of this action.

95.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of AI-Core's patent rights.

96.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

97.    Defendant's infringement of the '742 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of AI-Core's rights under the patent.

98.    AI-Core or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '742 patent.

99.    AI-Core has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to AI-Core in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

100.    AI-Core has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  AI-Core has and will continue to suffer this harm by virtue of Defendant's infringement of the '742 patent.  Defendant's actions have interfered with and will interfere with AI-Core's ability to license technology.  The balance of hardships favors

AI-Core's ability to commercialize its own ideas and technology. The public interest in allowing AI-Core to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 9,338,217

101.    AI-Core repeats and re-alleges the allegations in Paragraphs 1-15 above as though fully set forth in their entirety.

102.    The USPTO duly issued U.S. Patent No. 9,338,217 (the "'217 patent") on May 10, 2016 after full and fair examination by the USPTO of Application No. 11/079,932 which was filed on March 14, 2005. *See* '217 patent at 1.

103.    AI-Core owns all substantial rights, interest, and title in and to the '217 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

104.    The claims of the '217 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting computer systems and computer functionality within a wide area network.

105.    The written description of the '217 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

106.    Defendant has directly infringed one or more claims of the '217 patent by providing, supplying, using, causing to be used, distributing, importing, selling, offering for sale, and/or internal and external testing the Accused Products.

107.    The Accused Products, such as the Omron FH Series Vision System, utilize FH series sensor controller(s), which accessed by a computer via a network, to perform machine vision, and each controller has its own configuration i.e., system settings that can be saved and loaded by a computer used to access the controllers.

108.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '217 patent.

109.    AI-Core or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '217 patent.

110.    AI-Core has been damaged as a result of the infringing conduct by Defendant alleged above.  Defendant is liable to AI-Core in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

111.    AI-Core hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

112.    AI-Core requests that the Court find in its favor and against Defendant, and that the Court grant AI-Core the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.    A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '834 patent, '298 patent, '036

patent, '516 patent, and '742 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '834 patent, '298 patent, '036 patent, '516 patent, and '742 patent by such entities;

c. Judgment that Defendant account for and pay to AI-Core all damages to and costs incurred by AI-Core because of Defendant's infringing activities and other conduct complained of herein;

d. Judgment that Defendant's infringements of the '834 patent, '298 patent, '036 patent, '516 patent, and '742 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f. That this Court declare this an exceptional case and award AI-Core its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: August 1, 2024                    Respectfully submitted,

                                         By:/s/ C. Matthew Rozier

                                         C. Matthew Rozier (CO 46854)*
                                         **ROZIER HARDT MCDONOUGH PLLC**
                                         1500 K Street, 2nd Floor
                                         Washington, District of Columbia 20005
                                         Telephone: (404) 779-5305; (202) 316-1591
                                         Email: matt@rhmtrial.com

                                         James F. McDonough, III (GA 117088)*
                                         **ROZIER HARDT MCDONOUGH PLLC**
                                         659 Auburn Avenue NE, Unit 254
                                         Atlanta, Georgia 30312
                                         Telephone: (404) 564-1866
                                         Email: jim@rhmtrial.com

                                         Jonathan Hardt (TX 24039906)*
                                         **ROZIER HARDT MCDONOUGH PLLC**
                                         712 W. 14th Street, Suite A
                                         Austin, Texas 78701
                                         Telephone: (737) 295-0876
                                         Email: hardt@rhmtrial.com

                              *Attorneys for Plaintiff AI-CORE TECHNOLOGIES, LLC*

                                                        *admitted to E.D. Texas*

**Attachments**

- Civil Cover Sheet
- Proposed Summons